## In re BIG CAHABA COAL CO.

(District Court, N. D. Alabama, S. D. October 11, 1911.)

No. 9,849.

BANKRUPTCY (§ 288*)—JURISDICTION OF COURT—PROPERTY IN POSSESSION OF ADVERSE CLAIMANT.

A coal company prior to its bankruptcy entered into a contract with a railroad company for the construction of a spur track from its line to the bankrupt's mine, which was built partly on the railroad right of way and partly on a right of way furnished by the bankrupt, but conveyed to the railroad company. The grading and ties were furnished by the bankrupt, and the rails were furnished and laid by the railroad company, but were paid for by the bankrupt, which was to be reimbursed by the railroad company by a rebate on each ton of coal shipped for 4½ years; the railroad company having the right in the meantime to use the track for other purposes, which it did prior to the bankruptcy. After that the trustee rejected the contract as burdensome and sold the track material in place. *Held*, that such material was in possession of the railroad company under the contract, and that the bankruptcy court was without jurisdiction to take it from such possession by a summary order, without the railroad company's consent and against its claim of ownership.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In the matter of the Big Cahaba Coal Company, bankrupt. On review, on petition of the Southern Railway Company, of order of referee. Reversed.

J. T. Stokely, for petitioner.
Ullman & Winkler, for respondents Shook & Fletcher.

GRUBB, District Judge. This was a petition filed by the Southern Railway Company to review an order of the referee restraining the railway company from interfering with the removal of certain track material by the purchaser thereof from the trustee in bankruptcy of the Big Cahaba Coal Company. The question of the jurisdiction of the bankruptcy court to determine the title to this property in a summary way is raised by the railway company.

The referee found that the bankrupt was in possession of the track material at the time of the filing of the petition, that his possession passed to the receiver in bankruptcy, and from him to the trustee. If the receiver and trustee had possession of the property in question, it was only by virtue of the prior possession of the bankrupt. The

record shows that there was no independent taking of possession of this property by either. The receiver, upon his appointment, designated the mine foreman of the bankrupt to take possession of all of the assets then in possession of the bankrupt for him, and he did so. At that time the bankrupt had not scheduled the track material in controversy. The receiver discovered the bankrupt's interest in it, and the trustee thereafter filed an application to the court to be allowed to sell it at private sale. This is the only taking possession by the bankruptcy court by its officers supported by the record. It might suffice, in the absence of outstanding claim and possession in another than the bankrupt. This question, therefore, resolves itself into the status, as to possession, of this property at the time of the filing of the petition.

The material was in a spur track, part of which was on the general right of way of the railway company and part on a right of way furnished the railway company by the bankrupt, or at its expense, and the title to which was vested in the railway company. The spur track was graded and cross-ties furnished and laid by the bankrupt, and the track material was furnished and laid by the railway company, but was agreed to be paid for by the bankrupt upon completion of the track. The railway company agreed to reimburse the bankrupt for this payment by rebating them five cents on each ton of coal shipped for 4½ years after completion of track, at which time, manifestly, the title to the track and material was to vest in the railway company under the terms of the contract. During the 4½ years the track was to be operated exclusively by the railway company for the benefit of the bankrupt and others. The provision of the contract in this respect is:

"(7) That the railway company shall have entire control of said tracks and the operation thereof, and may use the same as well for the business of third persons, not parties hereto, as for that of the coal company; provided, however, that such operation of said tracks for the benefit of third persons shall not unreasonably interfere with the business of the coal company."

After the completion of the track, a few cars of coal were handled over it by the railway company under this arrangement before bankruptcy, and either before or after bankruptcy some slight use was made of it for the benefit of others than the bankrupt. The record tends to show that the bankrupt's permission was first obtained for this additional use; but clearly it was not required by the terms of the contract. The railway company claimed possession and the right to it by said contract. This was the status of the possession at the time the petition was filed.

The finding of the referee is from practically undisputed facts, set out in the record, and, when the finding is an inference drawn in this way, it is entitled to no presumption in its favor. As I see it, the only inference which the facts admit of is that the railway company was in possession of the track, and with it the track material, claiming rights in it under the contract adverse to it and to its trustee. The bankrupt's interest was in the contract, and not in the specific material, the possession of which had been intrusted exclusively to the railway com-

pany to enable it to carry out the contract. As long as the contract was a subsisting one, and during its life, as between the parties, the railway company was alone entitled to possession of the material. This conclusion deprives the bankruptcy court of jurisdiction to deprive the railway company of possession of the track material by a summary proceeding, and renders decision of the remaining questions unnecessary.

However, as it may shorten litigation, it may be proper to express my views on the merits. I am quite clear that the contract provided for removal of the track material only in the event of the abandonment of the mine by the bankrupt, and then only at the option of the railway company. Excluding this contingency, the bankrupt had no right to remove the track material during the 4½ years, and had no interest in it after this period. Its interest during that period was confined to the rebate required to be paid it on each ton of coal until the amount it had advanced to the railway company for the value of the track material was reimbursed to it. The railway company furnished the bankrupt the track material necessary to carry out the contract, for which the bankrupt paid it, and then refurnished it to the railway company for use in carrying out the contract, with the provision that the railway company could acquire title to the whole, or so much of the material as it paid the bankrupt for by rebates, or to the whole, or so much of it as remained unpaid for by rebates on shipments, at the expiration of the 4½ years from the time of the completion of the track, if the contract then remained effective. Until so paid for, and within the 4½ years, the ownership of the track material remained in the bankrupt, subject to the rights of the railway company conferred by the contract.

This was the status when the petition in bankruptcy was filed. The bankruptcy conferred on the trustee the right for the estate to adopt or reject the contract. He elected to reject it as burdensome. While this conferred on the railway company a claim against the estate for damages for breach of contract, it did not authorize the railway company to appropriate the property of the bankrupt used by the railway company in connection with the contract. Upon the termination of the contract by the bankruptcy and the rejection of it by the trustee, the rights of the parties to the property being used in its execution, and which was in the possession of the railway company to that end, were the same as before the contract was entered into. This being true, the trustee would have the right to reclaim that part of the property which was owned by the bankrupt and furnished by it to the railway company for use under the contract.

The filing of the claim by the railway company worked no estoppel against it to assert what rights, if any, it had to the track material. The contract itself provided that it should be paid for the cost of labor and material consumed upon completion of the track. The filing of its claim was pursuant to, and not inconsistent with, whatever rights were given it thereby to the track material. If the trustee had assumed, instead of rejecting, the contract, the railway company would have been entitled to dividends on its claim, and also to the possession of the

track material, with the right to acquire title to it by the payment of rebates, or upon the expiration of the contract period of 4½ years, just as it would against the bankrupt, had the bankruptcy not intervened.

The election to reject the contract was exercised by the trustee by selling the track material, and its rejection was followed by the consequences before set out. However, as the method by which the property is sought by the purchaser to be reclaimed by summary proceeding is beyond the jurisdiction of the bankruptcy court, the purchaser must be remitted to his remedy by plenary suit to recover it.